**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CAROLYN DAVIS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DURHAM MENTAL HEALTH | ) | |
| DEVELOPMENTAL DISABILITIES | ) | 1:03CV273 |
| SUBSTANCE ABUSE AREA | ) | |
| AUTHORITY, d.b.a. and a.k.a. | ) | |
| The Durham Mental Health | ) | |
| Center, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on a motion for summary judgment by
Defendant Durham Center (docket no. 64).  Plaintiff has responded in opposition to
the motion and the matter is ripe for disposition.  Since there has been no consent,
I must address the motion by way of a recommended disposition.  For the following
reasons, it will be recommended that the court grant Defendant's motion.

**FACTS**

As is appropriate on a motion for summary judgment, the facts are presented
in the light most favorable to Plaintiff based on the evidence before the court.
Defendant Durham Center is a mental health area authority, created pursuant to
Article 4 of North Carolina's Mental Health, Developmental Disabilities, and

Substance Abuse Act of 1985 ("the Act"), N.C. GEN. STAT. §§ 122C-2 to 122C-433. The Durham Center currently serves as an administrator for the coordination of mental health services offered by private entities. *See* Def.'s Ex. I, Holliman Aff. ¶ 4. Plaintiff Carolyn Davis is an African-American woman of brown skin color who worked for the Durham Center for 24 years, beginning in 1977, until she was fired from her position as Deputy Area Director in August 2002. The undisputed evidence shows that Plaintiff advanced in her employment with Defendant without incident until February 2002. At that time, Defendant's Area Director resigned, Plaintiff stepped in as the Acting Area Director in the absence of a permanent Area Director, and Defendant began searching for an Interim Area Director. Plaintiff subsequently contacted Defendant's Board Chair, Mr. Harold Batiste, and expressed her interest in the Interim Area Director position. Davis Dep. No. 2, p. 30, lines 10-24, p. 39, lines 1-10. On February 12, 2002, Plaintiff met with the Personnel Committee for Defendant's Area Board and expressed her interest in the position. Davis Dep. No. 2, pp. 52-54. Plaintiff's then salary was $69,995, and she told the committee that she would want a $20,000 salary increase if she were chosen for the position. Davis Dep. No. 2, pp. 56-59. On February 18, 2002, Batiste informed Plaintiff that she was not going to be considered for the position because the Board did not need an Interim Area Director who was so inflexible about money.[1] Davis Dep. No. 1, p. 33,

---

[1] On Defendant's prior motion to dismiss, the parties disputed whether Plaintiff actually formally applied for the Interim Area Director position and, thus, whether Plaintiff stated a claim for discrimination based on failure to promote. Since the court here finds

-2-

lines 5-25, p. 34, lines 1-4.  On or around that same date, the Board went into a closed session to discuss personnel matters related to hiring an Interim Area Director.  On February 19, 2002, Plaintiff sent the following e-mail to other employees at the Durham Center:

> Contrary to information floating around, I was not and shall not be named interim area director.  It seems my salary request was too high and I was inflexible about it.  Those of you interested in the job should let your desire be known. I stand ready and willing to work for you.  I feel the area board's conduct was not very honorable toward me in the process, but that's okay.  I feel relieved and joyous at the thought of not being designated.  An interesting time lies ahead and I am comfortable being an observer rather than a key player.  It's all good.

Pl.'s Ex. G.  Thereafter, on March 4, 2002, the Board again went into closed session to interview candidates for the Interim Area Director position.  *See* Pl.'s Ex. E and F.  Plaintiff began to believe that the Board, in discussing personnel issues and interviewing candidates in closed sessions, was violating North Carolina's Open Meetings Law, N.C. GEN. STAT. § 143-318.10 (2005), which generally restricts the right of public bodies in North Carolina to meet in closed sessions.

On or around April 1, 2002, the Durham Center selected Ellen Holliman, a white non-employee, to serve as the center's Interim Area Director for a salary of $96,000.  Holliman Dep. p. 85, lines 12-14.  On or around May 2, 2002, Plaintiff filed a lawsuit against Defendant in Durham County Superior Court, seeking to have the court declare Holliman's appointment void based on Defendant's alleged violation

--------------------

that this part of Defendant's motion for summary judgment has been uncontested, the court need not delve further into this issue.

of North Carolina's Open Meetings Law.[2]  Plaintiff filed a Charge of Discrimination with the EEOC on August 5, 2002, alleging that she was not hired for the position of Interim Area Director because of her race, color, and age.[3]  On August 8, 2002, Plaintiff was placed on "suspended with pay" status pending an investigation of her failure, in her capacity as Acting Area Director, to inform the Board of any perceived violations of the Open Meetings Law.  On August 28, 2002, Defendant fired Plaintiff.

On March 26, 2003, Plaintiff filed a Complaint in this court against Defendant Durham Center and numerous other Defendants, alleging (1) race and color discrimination based on failure to promote and retaliation under Title VII and 42 U.S.C. § 1981; (2) age discrimination based on failure to promote and retaliation under the ADEA; (3) violations of Plaintiff's First Amendment rights; (4) and

---

[2]  The state court subsequently found no violations of the Open Meetings Law and furthermore ordered sanctions against Plaintiff under Rule 11 of the North Carolina Rules of Civil Procedure for initiating the lawsuit for an improper purpose–namely, in retaliation for Defendant's failure to appoint her as Interim Area Director and for leverage in obtaining a settlement from Defendant for her other personnel actions.  The trial court's award of sanctions was upheld by the North Carolina Court of Appeals.  *See Davis v. Durham Mental Health Dev. Disabilities Substance Abuse Area Auth.*, 165 N.C. App. 100, 109, 598 S.E.2d 237, 243 (2004).  Plaintiff also initiated two contested case hearings with the Office of Administrative Hearings.  For a thorough discussion of these other proceedings and a more detailed history of the case, see the court's prior Order adopting the magistrate judge's Recommendation on Defendant's motion to dismiss, *Davis v. Durham Mental Health Dev. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378 (M.D.N.C. 2004).

[3]  The EEOC issued a Right to Sue letter on December 27, 2002.  *See* Notice of Right to Sue, Charge # 141A200688.  Plaintiff also filed a separate EEOC charge based on the alleged retaliatory firing in August 2002, and the EEOC issued a Right to Sue letter as to that charge on May 15, 2003.  *See* Notice of Right to Sue, Charge # 141-2003-00009.

"[w]histleblower retaliation" under North Carolina's Whistleblower Act.[4]  By either order of the court or by stipulated dismissal, all claims and all defendants have been dismissed except for the Title VII race and color discrimination and retaliation claims against Defendant Durham Center (see docket nos. 54, 62, 68).[5]  Defendant has now moved for summary judgment as to these remaining claims, arguing that there is no genuine issue of material fact and Defendant is entitled to summary judgment as a matter of law.[6]

## STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  *Matsushita Elec. Indus. Co. Ltd.*

---

[4]  Plaintiff filed an Amended Complaint on July 1, 2003.

[5]  Plaintiff voluntarily dismissed her age discrimination and state whistleblower claims pursuant to FED. R. CIV. P. 41.

[6]  Defendant argues, alternatively, that Plaintiff failed to file a timely response to Defendant's summary judgment motion and the court should therefore deem the entire motion as uncontested.  The court will, in its discretion, consider the arguments set forth in Plaintiff's responsive brief.

-5-

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).  Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim.  *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).  When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party.  *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## DISCUSSION

### Plaintiff's Claims of Race and Color Discrimination Based on Failure to Promote under 42 U.S.C. § 2000e-2(a)

The court first addresses Defendant's motion for summary judgment as to Plaintiff's claims for race and color discrimination under 42 U.S.C. § 2000e-2(a) based on Defendant's failure to promote her to the Interim Area Director position. In support of the motion, Defendant argues that it is entitled to summary judgment as a matter of law because Plaintiff has admitted that she never formally applied for

-6-

position of Interim Area Director.[7]  In her brief in response to the motion for summary judgment, Plaintiff does not dispute this assertion, nor does she even argue her discrimination claims based on failure to promote.[8]  Indeed, the evidence shows that although Plaintiff expressed an interest in the Interim Area Position, she never went through a formal application process and specifically sent out an e-mail to co-workers disavowing her interest in the position before formal interviews began. Since Defendant has produced evidence showing that Plaintiff did not apply for the Interim Area Director position and because Plaintiff has failed to raise a genuine issue of fact as to this part of her claim, Defendant is entitled to summary judgment as a matter of law on Plaintiff's discrimination claim based on failure to promote.

Plaintiff's Claim of Retaliation under 42 U.S.C. § 2000e-3

In support of her retaliation claim under Title VII, Plaintiff argues that she was retaliated against for participating in the following activities: (1) for filing an EEOC charge against Defendant on August 5, 2002; (2) for accusing Defendant of violating North Carolina's Open Meetings Law; (3) for filing a lawsuit against Defendant in

---

[7]  Defendant also argues that Plaintiff has admitted that she was not considered for the position because of her salary demands and not because of race.

[8]  A plaintiff may establish a prima facie case of employment discrimination without applying for the position at issue if he shows that the employer's promotions policy was "informal and subjective" or "vague and secretive," *Lockridge v. Bd. of Trs.*, 315 F.3d 1005, 1010 (8th Cir. 2003), or by demonstrating that his employer consistently discriminated when making promotion decisions.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). Here, however, Plaintiff has not even argued that any of these exceptions exists in this case, nor does the record indicate the existence of any of these exceptions.

state court based on its alleged violation of the Open Meetings Law; and (4) for giving certain deposition testimony against Defendant in that lawsuit. 42 U.S.C. § 2000e-3 governs retaliation claims under Title VII and provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed

any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The legal standard for determining whether retaliation has occurred is similar to that of determining whether employment discrimination has occurred. "A plaintiff lacking direct evidence of retaliation may utilize the McDonnell Douglas . . . framework to prove a claim of retaliation." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). To prove a prima facie case of retaliation under Title VII, a plaintiff must show that he engaged in a protected activity, that the employer took an adverse employment action against him, and that there is a causal link between the adverse action and the protected activity. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998). Once a prima facie case has been presented, the employer has the burden of producing a legitimate, non-retaliatory reason for the adverse action, and the plaintiff must then show that the employer's proffered reasons are pretextual. *Price*, 380 F.3d at 212.

As for her claim for retaliation based on filing the EEOC charges, Plaintiff has proven her prima facie case with little difficulty. Plaintiff filed the EEOC charges on

August 5, 2002, alleging that she was not hired for the Interim Area Position because of race, color, and age. The filing of the EEOC charges is, of course, conduct that is protected activity under Title VII. Furthermore, Plaintiff clearly suffered an adverse employment action when she was fired about three weeks later on August 28, 2002. Finally, the temporal proximity of Plaintiff's EEOC filing and her termination of employment appears to be sufficient under Fourth Circuit precedent to create an inference of a causal link between these two events. *See McNairn v. Sullivan*, 929 F.2d 974 (4th Cir. 1991) (finding that the plaintiff stated a prima facie case of retaliation even though no evidence of a causal connection existed other than the fact that the plaintiff had engaged in protected activity and was subsequently discharged); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989)(same); *Perry-Bey v. City of Norfolk*, No. Civ.A.2:02CV07, 2002 WL 32373193, at *6 (E.D. Va. Oct. 30, 2002) (unpublished opinion) (where the court held that, in light of Fourth Circuit precedent, the plaintiff made out a prima facie case of retaliation despite evidence that the employer intended to fire the plaintiff before discovering she had filed an EEOC charge). Thus, Plaintiff has established a prima facie claim for retaliation based on the filing of the EEOC charges on August 5, 2002.

Since Plaintiff has established her prima facie case, an inference of discrimination arises, and it is Defendant's burden to articulate a legitimate, non-retaliatory reason for firing Plaintiff. Defendant has clearly met this burden by explaining that Plaintiff was fired because in her capacity as Acting Area Director,

it was her responsibility to inform Defendant's Board of any perceived rule violations and she failed to do so.[9]  *See* Holliman Dep. pp. 54, 57, 58.  The burden thus shifts back to Plaintiff to show by a preponderance of the evidence that Defendant's stated reason for firing Plaintiff was pretextual.  To prove that Defendant's stated reason for firing her was pretextual, Plaintiff must show that her EEOC filing on August 5, 2002, was at least a motivating factor in Defendant's decision to fire her.  For the following reasons, the court finds that Plaintiff has failed to do this.  First, the evidence shows that even before it was aware of the EEOC charges, Defendant had already commenced termination proceedings against Plaintiff based on her conduct related to the Open Meetings Law.  As the court has already noted, Plaintiff filed her charge of discrimination with the EEOC on August 5, 2002.  On August 8, 2002, Holliman, while acting as the Interim Area Director, placed Plaintiff on "suspended with pay" status so that Defendant could investigate Plaintiff's conduct related to her accusations of Open Meetings Law violations.  The letter of suspension gives the following reason for why Plaintiff was being suspended:

> In your capacity as Acting Area Director, and thus the Board's staff advisor, it was your responsibility to inform them of any perceived rule violations and you failed to do so.  Further, you stated in the deposition that you pointed out this violation to other Mental Health staff members. I believe that this matter warrants further investigation, and therefore I am placing you on investigatory suspension with pay pending its completion.

---

[9]  As Holliman explained in her deposition, Plaintiff "was terminated for setting the board up.  She was terminated for not advising the board when she knew that the board was wrong, and then turned around and sued them."  Holliman Dep. p. 100, l. 15.

Letter from Ellen Holliman to Carolyn Davis (Aug. 8, 2002), Def.'s Ex. F.  Plaintiff does not dispute that the EEOC did not send Defendant the Notice of Charge of Discrimination until several days later on August 12, 2002.  *See* Notice of Charge of Discrimination from EEOC to Durham Center, Def.'s Ex. G.  On August 28, 2002, Defendant fired Plaintiff.  The termination letter states, in part:

> According to your sworn deposition and Errata you were fully aware that the open meetings law was being violated when the Area Board moved into closed session on February 19, 2002.  In your capacity of Acting Area Director, and thus [the] Board's staff advisor, it was your responsibility to inform board officials of any perceived rule violations and you failed to do so.  This in my opinion constitutes unacceptable personal conduct defined as conduct which is unbecoming an employee, detrimental to the agency's service, and for which no reasonable person should expect to receive prior warning.

Letter from Ellen Holliman to Carolyn Davis (Aug. 28, 2002), Def.'s Ex. H.  Thus, the undisputed facts show that even before Defendant received the discrimination charges from the EEOC, Defendant had already placed Plaintiff on "suspended with pay" status for her failure to notify the board of what she believed were violations of the Open Meetings Law.  The fact that Defendant began investigating this conduct before it was even aware of Plaintiff's EEOC charges tends to show that the ultimate decision to fire Plaintiff was, as Defendant contends, based on Plaintiff's conduct related to accusations of open meetings violations rather than because of Plaintiff's EEOC filing on August 5, 2002.

In attempting to show pretext, Plaintiff argues that several other employees were also present at the meetings and did not speak to the Board about the alleged

violations, but they were not terminated or even disciplined. Thus, Plaintiff points to the different way in which she was treated as evidence of pretext. This argument requires an assumption that the other staff members perceived (as Plaintiff did) that the Open Meetings Law was being violated and that the other staff members had an obligation (like Plaintiff) to inform the Board of the violation. Plaintiff has offered no evidence to show any reason why the other staff members may have thought that the board was violating the Open Meetings Law. Indeed, in Plaintiff's state lawsuit against Defendant, the North Carolina state courts ultimately determined that the Open Meetings Law was not violated and that Plaintiff's state lawsuit was brought in retaliation for Defendant's failure to appoint her as Interim Area Director and for leverage in obtaining a settlement from Defendant for her other personnel actions. Furthermore, Holliman stated in her deposition that Plaintiff was treated differently than the other staff members because she had filed the state court lawsuit against Defendant alleging open meetings violations.[10]  Holliman Dep. p. 100, l. 13. Thus, the fact that the other staff members did not complain and the fact that they were not disciplined does not show that Defendant's stated reason for firing Plaintiff was pretextual and that her EEOC filing was a motivating factor for the firing. Here, aside from merely pointing out that she filed the EEOC charges and she was subsequently

---

[10]  Indeed, Holliman suggested in her deposition that Plaintiff was fired in part in retaliation for filing the state court lawsuit against Defendant. *See* Holliman Dep. p. 100. As explained below, however, the filing of a state court lawsuit based on an alleged violation of a state's open meetings law is not activity that is protected under Title VII.

-12-

fired, Plaintiff has offered no evidence that the EEOC charges were a motivating factor in Defendant's decision to fire her. Courts in this circuit have stated that "'[m]ere knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against the employee." *Spratley v. Hampton City Fire Dep't,* 933 F. Supp. 535, 542 (E.D. Va. 1996) (quoting *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)); *see also Bourger v. Eaton Corp.*, 114 F. Supp. 2d 412, 421 (W.D.N.C. 2000) (stating that "[s]peculative assertions that a defendant's motivation was unlawful is not enough to withstand summary judgment"). In sum, the court finds that Plaintiff has not met her burden of showing that Defendant's stated reason for firing her was pretextual. Thus, it will be recommended that the court grant summary judgment to Defendant on Plaintiff's retaliation claim based on the filing of the EEOC charges on August 5, 2002.

As for the other bases for retaliation, Plaintiff argues that she was fired for complaining about Open Meetings Law violations, for filing the state court lawsuit against Defendant, and for giving deposition testimony in that lawsuit. Pl.'s Br. at 11. None of these activities, however, are protected under Title VII. In other words, since violating North Carolina's Open Meetings Law is not made unlawful by Title VII, complaints and lawsuits over such violations cannot constitute protected activity under Title VII. Thus, these activities cannot be the bases for Plaintiff's Title VII retaliation claim. It will, therefore, be recommended that the court grant summary judgment to Defendant on Plaintiff's retaliation claim.

-13-

**CONCLUSION**

For the reasons stated herein, it is **RECOMMENDED** that the court **GRANT**

Defendant's motion for summary judgment (docket no. 64) and dismiss Plaintiff's

action in its entirety.[11]

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
September 19, 2005

---

[11] The court notes that Defendant has requested attorneys fees as part of its costs in defending this action. Title VII generally allows the court, in its discretion, to award attorneys fees as part of the costs to the prevailing party in an action brought under Title VII. _See_ 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs."). Where the prevailing party is the defendant, however, the court's discretion has been limited by the United States Supreme Court, which has held that a court may only award attorneys fees to a prevailing defendant after first "finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." _Christiansburg Garment Co. v. EEOC_, 434 U.S. 412, 421 (1978). If this Recommendation is adopted and if summary judgment is granted for Defendant, the issue of attorneys fees will need to be addressed at a later date.

-14-